420 A.2d 640

## COMMONWEALTH of Pennsylvania

v.

## Harry P. PYTAK, Appellant.

Superior Court of Pennsylvania.

Argued June 6, 1979.

Filed June 20, 1980.

Petition for Allowance of Appeal Denied Oct. 29, 1980.

480

Carol McGinley, Assistant Public Defender, Allentown, for appellant.

Scott K. Oberholtzer, Assistant District Attorney, Allentown, for Commonwealth, appellee.

Before PRICE, GATES and DOWLING, JJ.*

PRICE, Judge:

Appellant was tried before a jury and convicted on September 20, 1977, of kidnapping[1] and robbery.[2] He filed post–verdict motions for a new trial and in arrest of judgment, which were denied by the court en banc. He takes this appeal alleging that the trial court erred in failing to suppress items seized as a result of an illegal search and in failing to grant his motion for a mistrial following allegedly prejudicial testimony concerning identification from a photographic array. Since we find that these contentions lack merit, we affirm the judgment of sentence.

---

* President Judge G. THOMAS GATES of the Court of Common Pleas of Lebanon County, Pennsylvania and Judge JOHN C. DOWLING of the Court of Common Pleas of Dauphin County, Pennsylvania are sitting by designation.

1. 18 Pa.C.S. § 2901.

2. 18 Pa.C.S. § 3701.

The following facts were adduced at trial. On the morning of December 11, 1976, a car with two male occupants pulled into Miller's Mobil Station and was serviced by James Mulqueen, an attendant. The car was driven away, but returned a few minutes later. The two occupants exited the car and entered the station. At gun point they took $100 from the cash register, and a watch and cash that Mulqueen had in his possession. They then forced Mulqueen into the car and drove off. Eventually, Mulqueen was released near Tamaqua, Pennsylvania.

Appellant's arrest was accomplished as a result of the following sequence of events that were revealed at the suppression hearing. On December 16, 1976, at about 10:30 a. m., State Trooper Stephen Sepkowski of the Pottsville substation went to the Schuylkill County Prison and received a written statement from one Christine Stephany that implicated her husband and appellant in a burglary and auto theft that had occurred in Schuylkill County.[3] Later, during the same morning, Trooper Sepkowski was contacted by Patrolman Toby Harbst of the South Whitehall Police Department, Lehigh County, and informed that felony warrants for kidnapping and robbery had been issued for appellant's arrest. Patrolman Harbst expected to arrive at the Pottsville substation by 1:00 p. m. that day and requested help in serving the warrants. At approximately 11:45 a. m. a confidential informant contacted Trooper Sepkowski and stated that appellant planned to sell his automobile at 1:00 p. m. on that day and then leave the area. This informant had, on one prior occasion, supplied the police with information that proved to be true.

At this point, Trooper Sepkowski attempted to contact a magistrate to procure a warrant for appellant's arrest, but learned that the magistrate was at lunch. The officer was unable to contact him at the restaurant the magistrate sometimes frequented, and he decided to proceed without a

3. Trooper Sepkowski testified that previously, on December 14, a revolver taken from that burglary had been recovered in the trunk of a vehicle operated by Ms. Stephany.

warrant. Accompanied by three other officers, Trooper Sepkowski went to appellant's residence. Before entering, he observed appellant's car outside the building and noted that the front and rear floors of the vehicle were cleaner than he had observed them on previous occasions. He knocked on the door, and appellant answered and allowed the officers to enter. Trooper Sepkowski read him his rights and informed him that he was being arrested for burglary and auto theft. After explaining this, Trooper Sepkowski noticed a watch hanging from a nail in a nearby wall of the apartment. It fit the description Patrolman Harbst had previously given him of a watch taken during a robbery and kidnapping that he was investigating, in which appellant was mentioned as a suspect. Trooper Sepkowski obtained appellant's signature on a consent to search form and seized the watch, which he subsequently turned over to Patrolman Harbst. It was later identified as the one taken in the Lehigh County robbery.

Appellant objects that this watch was illegally seized and inadmissible at trial because it was the product of a search following an illegal arrest. He claims that there was insufficient probable cause to support the arrest and, in any event, that a warrantless arrest in his home was not justified. We disagree.

Probable cause to arrest exists if the facts and circumstances within the officer's knowledge have been gained by reasonably trustworthy means and are sufficient to warrant a man of reasonable caution to believe that the suspect has committed or is committing a crime. *Commonwealth v. Murray*, 437 Pa. 326, 263 A.2d 886 (1970); *Commonwealth v. Marino*, 435 Pa. 245, 255 A.2d 911 (1969), *cert. denied*, 397 U.S. 1077, 90 S.Ct. 1526, 25 L.Ed.2d 811 (1970). We are mindful that we should not assess the sufficiency of the officer's information as legal technicians examining the situation in retrospect, but rather that the concept of probable cause involves dealing with probabilities arising from the practical considerations of everyday life upon which prudent men rely. *Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d

119 (1974); *Commonwealth v. Donnelly*, 233 Pa.Super. 396, 336 A.2d 632 (1975).

■ Trooper Sepkowski was entitled to rely on Patrolman Harbst's statement that he had procured a warrant for appellant's arrest and could assume from that statement that Patrolman Harbst had offered the magistrate sufficient information to support an independent judicial assessment of probable cause. *Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). However, in relying on the summary assertions of another officer, he could acquire no greater authority than could be exercised by that officer, and the arrest is unlawful unless the instigating officer did, in fact, have probable cause to make the arrest. *United States v. Miles*, 468 F.2d 482 (3d Cir. 1972); *Commonwealth v. Whitson*, 461 Pa. 101, 334 A.2d 653 (1975).

■ The testimony of Patrolman Harbst at the suppression hearing demonstrates that he had clear probable cause to make an arrest.[4] He had received a statement from an accomplice's wife, Ms. Stephany, that appellant and her husband had returned home with a sum of money a few hours after the occurrence of the offense. She repeated their remark that they had "pulled a job" near Allentown and had taken the gas station attendant with them in the car. Patrolman Harbst had a substantial basis for crediting this hearsay testimony. *See United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Commonwealth v. Falk*, 221 Pa.Super. 43, 290 A.2d 125 (1972). The statement was made on the basis of acts and admissions that the informant had personally witnessed. As the wife of an accomplice, she was likely to be in a position to observe such

4. Appellant notes that no written affidavit or application for the arrest warrant was offered into evidence and attacks the ability of the motion court to rely on oral testimony about the underlying facts that resulted in issuance of the warrant. In the instant circumstances, we do not find ourselves limited to the four corners of the warrant because the arrest, being one for a felony, was one which could properly be made upon probable cause, without a warrant. Pa.R. Crim.P. 101(3).

behavior. Furthermore, the revelation of the source of this information by name is a fact to be considered in determining the reliability of the informant because it indicates that she is not a paid informer and not immune from prosecution for giving false information. *Commonwealth v. Stokes,* 480 Pa. 38, 389 A.2d 74 (1978); *Commonwealth v. Falk, supra.*

■ Of particular importance in determining the credibility of this information is the corroboration of Ms. Stephany's story by other sources. *United States v. Harris, supra; see Commonwealth v. Falk, supra.* The victim, James Mulqueen, identified appellant from a series of photographs as one of the perpetrators of these offenses, thus confirming his participation. Indeed, identification of the suspect by the victim may, of itself, be sufficient to supply probable cause for arrest. *See Commonwealth v. Hall,* 456 Pa. 243, 317 A.2d 891 (1974); *Commonwealth v. Wiggins,* 239 Pa.Super. 256, 361 A.2d 750 (1976). Clearly, the knowledge possessed by Patrolman Harbst was sufficient to support the arrest made by Trooper Sepkowski.

■ Appellant argues that Trooper Sepkowski was acting on his own initiative and points to the fact that in making the arrest, he only informed appellant of the charges in Schuylkill County and not the robbery and kidnapping. For the validity of an arrest to be upheld, however, it is not necessary that the accused be informed at the time of making the arrest of its cause if he knows that the arresting officials are police officials. *Commonwealth v. Negri,* 414 Pa. 21, 198 A.2d 595 (1964). Therefore, Trooper Sepkowski's failure to notify appellant of the instant charges did not invalidate the arrest. The facts are still clear that prior to the arrest Trooper Sepkowski had sufficient information within his knowledge to believe that appellant had committed a crime and did not independently initiate the arrest without probable cause. To the contrary, Patrolman Harbst's contact requesting aid was a major impetus to make this arrest. To fail to uphold the arrest in these circumstances would seriously hamper cooperation between

486

the police of different jurisdictions and undermine effective enforcement of the law.[5]

Although we have determined that the arrest was made upon sufficient probable cause, our inquiry is not ended. Since the arrest was made at appellant's home without a warrant, the intrusion must be justified by a showing of exigency.[6] *Commonwealth v. Wagner*, 486 Pa. 548, 406 A.2d 1026 (1979); *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978). In *Williams*, the supreme court enumerated the following considerations in determining whether exigent circumstances existed: (1) whether a grave offense was involved, particularly one of violence; (2) whether the suspect was reasonably believed to be armed; (3) whether there was a clear showing of probable cause, rather than a minimal showing of probable cause, to believe the suspect committed the crime; (4) whether there was strong reason to believe the suspect was on the premises being entered; (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended; (6) whether the entry was made peaceably; and (7) whether the entry was during the daylight or nighttime hours.

In the instant case, all of these factors weigh in favor of upholding the intrusion. First, appellant was suspected of robbery and kidnapping, both of which crimes

5. Appellant claims that an officer may only rely on the information possessed by another officer to supply probable cause when that officer is a superior and orders the arrest. We agree that the case authority in Pennsylvania has arisen in this context, but we do not find that this is a necessary prerequisite. Indeed, in *Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), the warrant was obtained in one county, which fact was communicated by radio to another county and acted upon by a patrolman of a local police department.

6. We note that the United States Supreme Court recently prohibited police from making warrantless, nonconsensual entries into the homes of suspects for the purpose of effecting routine felony arrests. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The court, however, declined to consider the sort of exigent circumstances that would justify warrantless entry into a home for the purpose of search or arrest and, hence, *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978) is still controlling.

involve the use of force. Second, he was reasonably believed to be armed with a shotgun that had been stolen with the later–recovered revolver in the Schuylkill County burglary that Trooper Sepkowski was investigating and in which Ms. Stephany had implicated appellant. Third, Ms. Stephany's statement and the victim's identification supplied clear probable cause to arrest appellant. Fourth, entry was made into appellant's residence while his car was parked outside, giving the police strong reason to believe that appellant was present. Fifth, the police had a tip that appellant was preparing to leave, and this tip was corroborated by the unusually clean nature of the car. Combined with the previously demonstrated reliability of the informer, this information was sufficient to establish a need to act swiftly. Furthermore, this exigency was not a product of any prior delay by the police between the time of receiving sufficient information to form probable cause and the time of apprehension. The information establishing probable cause had only been received on the day before and the day of the arrest, and the officers acted immediately upon its receipt. Finally, the entry was accomplished without force and during daylight hours, thus minimizing its intrusive nature.

As appellant's arrest was legal, the officers were lawfully in a position to observe the watch, which hung in plain view from a nail in the wall. Thus, the watch could properly be seized without a search warrant under this well–established exception to the fourth amendment warrant requirement. *Commonwealth v. Tome*, 484 Pa. 261, 398 A.2d 1369 (1979); *Commonwealth v. Weimer*, 262 Pa.Super. 69, 396 A.2d 649 (1978).

The seizure of the watch is also supported by appellant's signing of the consent to search form indicating his permission to search. Although the form was signed while he was under arrest, the voluntariness of his consent is not necessarily vitiated. Custody is an important circumstance in determining voluntariness of consent and the Com-

monwealth's burden of proving voluntariness is thereby rendered especially heavy, *Commonwealth v. Woods*, 240 Pa.Super. 72, 368 A.2d 304 (1976); but the voluntariness is to be measured from the totality of the circumstances. *Commonwealth v. Watkins*, 236 Pa.Super. 397, 344 A.2d 678 (1975); *Commonwealth v. Dressner*, 232 Pa.Super. 154, 336 A.2d 414 (1975).

It is critical in assessing the voluntariness of appellant's consent to note that he had been fully informed of his constitutional rights. He had been read a complete *Miranda* warning just minutes earlier during the arrest procedure, and Trooper Sepkowski had explained the consent to search form and given appellant time to read it before his signature was obtained. In the Third Circuit, the provision of the *Miranda* warning alone, followed by a consent to search, is not only persuasive but controlling on the question of voluntariness. *United States v. Menke*, 468 F.2d 20 (3d Cir. 1972); *Commonwealth v. Woods, supra; Commonwealth v. Richard*, 233 Pa.Super. 254, 336 A.2d 423, *cert. denied*, 423 U.S. 1017, 96 S.Ct. 452, 46 L.Ed.2d 389 (1975). This court has held that when advice concerning constitutional rights is furnished the consenting party, it is very persuasive evidence of voluntariness and may be determinative even though the consent was given after a display of weapons and while the consenter was in custody. *Commonwealth v. Richard, supra.*

Moreover, another circumstance to be considered is the expectations of the consenting party. If the consenter believes that the evidence is unlikely to be discovered, the consent was probably voluntary. *Commonwealth v. Dressner, supra.* The present facts show that appellant was not informed at this time that he was being arrested for the robbery in Lehigh County, and since the watch was not a particularly unusual one, a wrist–type Timex calendar watch, he could not have expected the officers from Schuylkill County to recognize it. We find, therefore, that appel-

lant's consent was rendered voluntarily and that the watch was properly seized pursuant to it.

Appellant's second contention is that the court erred in not declaring a mistrial upon his objection to the victim's testimony that he had selected appellant's picture from an array supplied by the police. Appellant claims that because the Commonwealth offered no explanation for the possession of the photograph by the police, the only logical inference that could be drawn by the jury was that he had a prior criminal record and that he was prejudiced by this inference. This argument lacks merit.

In *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972), our supreme court examined the question of when references to photographs supplied by police would require reversal and focused the deliberation as follows:

> [T]he controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal actiivty. A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference .... *Id.*, 448 Pa. at 181, 292 A.2d at 375 (1972).

The present facts illustrate just such a passing reference. The witness merely replied in the affirmative when asked if he had identified appellant from pictures displayed by the police. The reference was brief; the photographs were never displayed, marked, admitted, or otherwise referred to at trial. In cases like this one, in which no explanation for the possession of the photograph by the police is offered, it is highly unlikely that a juror would conclude from the fact of the possession alone that the accused had engaged in prior criminal conduct, and therefore, no reversible error is shown. *Commonwealth v. Carlos*, 462 Pa. 262, 341 A.2d 71 (1975).

The judgment of sentence is affirmed.