514 A.2d 167

**COMMONWEALTH of Pennsylvania**

v.

**Ronald MONROE, Appellant.**

Superior Court of Pennsylvania.

Submitted June 23, 1986.

Filed Aug. 22, 1986.

Robert F. Pappano, Assistant Public Defender, Chester, for appellant.

Vram Nedurian, Jr., Assistant District Attorney, Newtown Square, for Com., appellee.

Before OLSZEWSKI, CERCONE and HESTER, JJ.

OLSZEWSKI, Judge:

We affirm, upon the well-reasoned opinion of the Honorable Rita E. Prescott, the judgment of sentence for robbery, theft by receiving stolen property, possession of a firearm without a license, and criminal conspiracy, entered against appellant, Ronald Monroe.

We would only add the case of *Commonwealth v. Cooke*, 342 Pa.Super. 58, 492 A.2d 63 (1985), as additional support for denial of appellant's allegation that there was insufficient evidence to sustain the conspiracy conviction. In that case, we reaffirmed our belief that the conduct of the

parties and the circumstances surrounding the crime may create a "web of evidence" linking the accused to the alleged conspiracy beyond a reasonable doubt.

Judgment of sentence affirmed.

## APPENDIX

### COMMONWEALTH OF PENNSYLVANIA

vs.

### RONALD MONROE

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

FILED: March 14, 1986

Jana Nestlerode, Assistant District Attorney, Media, for Com.

Lawrence R. Dworkin, Chester, for defendant.

PRESCOTT, J.

### OPINION

On February 15, 1985, the Defendant, Ronald Monroe, was convicted by a jury of Robbery, Theft by Receiving Stolen Property, Possession of a Firearm Without a License and Criminal Conspiracy. By Order dated December 10, 1985, Defendant's Motions for New Trial and/or Arrest of Judgment were denied. On January 21, 1986, the Defendant was sentenced and on January 30, 1986, Defendant filed an appeal with the Superior Court of Pennsylvania, thus necessitating this opinion.

Defendant's post-trial motions raised the following two issues:

(1) Whether sufficient probable cause existed which would have justified a stop of the Defendant's vehicle;

(2) Whether the jury verdict as to criminal conspiracy was supported by legally sufficient evidence.

Before addressing the issues raised by Defendant's post-trial motions, this Court will proceed to review the facts of the case. In many instances the evidence introduced at the suppression hearing was identical to the evidence introduced at trial. Therefore, all the facts of the case will be set forth immediately hereafter and relevant sections of same will be discussed as they apply to the issues raised.

On March 10, 1984, at or about 3:20 A.M., Defendant Monroe drove and parked his car in a parking lot in front of the Acme Supermarket situated at the corner of Baltimore Pike and Bishop Avenue, Upper Darby, Pennsylvania. The passenger in said car, Virgil Barclay, got out and walked back and forth along the front of the store while looking into the store's glass windows. Barclay then entered the store and pointed a .38 caliber revolver at the cashier and demanded money. The cashier handed Barclay about $100.00 in small bills and Barclay ran out of the store with a bag and a gun in his hands and got into the passenger side of the car in question. Defendant then drove out of the parking lot with the headlights turned off.

Corporal Robert Keates of the Clifton Heights Police Department was on duty at police headquarters at all time relevant hereto. He received a police radio message that the Acme store had just been robbed by two black males who left the scene in a light-colored, full-sized vehicle. Within two minutes of the radio message, Corporal Keates left the police station, entered his police car and proceeded west on Baltimore Pike toward the subject Acme market. While proceeding in the said direction, Corporal Keates received further information that the robber was 5'9" tall, black, had no facial hair, was wearing a jacket and had the cash in small bills. After proceeding approximately three-quarters of a mile, Corporal Keates observed the Defendant's full-sized, light colored vehicle travelling toward him in the opposite direction on Baltimore Pike. Corporal Keates first observed this vehicle at the intersection of Baltimore Pike and Oak Avenue, which intersection is located approximately two blocks from the Acme store which

had been robbed. Corporal Keates observed that the driver of the vehicle, the Defendant, was a slender, clean-shaven, black male. As the Defendant's vehicle approached Keates' marked police car, he saw the passenger in the Defendant's vehicle duck down. After the vehicles passed each other, Corporal Keates continued to observe the Defendant's vehicle and noted that the passenger was still hunched over. At that point, Corporal Keates became suspicious, made a U-turn and followed Defendant's vehicle. Corporal Keates observed Defendant Monroe bending from side to side as if reaching for or moving something. This unusual behavior while driving further aroused Keates' suspicion and when he got close enough to see the registration tag on the vehicle, Corporal Keates radioed his intention to stop the car at Baltimore Pike and New Street. Although this particular intersection was still some distance away, Corporal Keates wanted to allow some time for a back-up officer to meet him at said location which he knew to be well lighted and not very isolated.

Corporal Keates eventually stopped the Defendant's vehicle at the stated location. Upon stopping, the Defendant jumped out of the driver's side and approached the police car. Corporal Keates told the Defendant to stop and to return to his vehicle. Upon checking that a back-up police officer was coming, Corporal Keates approached the Defendant. During this entire time, the Defendant's passenger remained hunched over and did not sit up until Keates was at the back corner of Defendant's vehicle. When Corporal Keates shined his flashlight inside the vehicle, he saw a lot of crinkled up bills on the front seat of the vehicle. Some of the bills were on the driver's side, some were on the floor and some were on the passenger's side. Keates also observed the passenger move his hands toward the glove compartment in which a .38 revolver was later found. Both occupants of the vehicle were arrested and Joseph Trojan, the Acme cashier, identified the passenger as the robber.

The first issue raised by Defendant was: Whether sufficient probable cause existed which would have justified a stop of Defendant's vehicle.

Both the United States and Pennsylvania Constitutions prohibit unreasonable searches and seizures of persons or property. To determine what is a reasonable search, the courts have adopted the standard of probable cause, which has been defined as follows:

"Probable cause to arrest exists if the facts and circumstances within the officer's knowledge have been gained by reasonably trustworthy means and one sufficient to warrant a man of reasonable caution to believe that the suspect has committed or is committing a crime." *Commonwealth v. Pytak*, 278 Pa.Super. 476, 485, 420 A.2d 640, 644 (1980).

The Superior Court of Pennsylvania stated in *Pytak*, supra, the test for probable cause is a practical one and not an academic exercise. The Court in *Pytak* explained this principle as follows:

"We are mindful that we should not assess the sufficiency of the officer's information as legal technicians examining the situation in retrospect, but rather that the concept of probable cause involves dealing with probabilities arising from the practical considerations of everyday life upon which prudent men rely." *Commonwealth v. Pytak*, 278 Pa.Superior Ct. 483, 420 A.2d 644.

In summary, the substance of probable cause is a reasonable basis for belief that a suspect has committed or is committing a crime. It is only the probability of criminal activity that is the standard of probable cause. This means less than evidence which would justify conviction, or even a *prima facie* showing of criminal activity; but more than a mere suspicion. *Commonwealth v. Murray*, 437 Pa. 326, 263 A.2d 886 (1970); *Commonwealth v. Pytak*, supra.

■ In the case at hand, Corporal Keates received information that a robbery had occurred only minutes earlier at the Acme store in question. Within two minutes of receiv-

ing that information, Corporal Keates got into his police car and headed for the scene of the robbery. He also knew that the perpetrator of the robbery was a clean-shaven, black male who was travelling in a full-sized, light colored vehicle. Within five minutes of the robbery, Corporal Keates spotted a full-sized, light colored vehicle being operated by a clean-shaven, black male proceeding toward him *from the direction of the scene of the robbery.* The streets were otherwise deserted and Corporal Keates first observed the subject vehicle at a location only two blocks from the scene of the robbery. As the subject vehicle approached the marked police car, the passenger ducked down and he remained in that position while Corporal Keates followed the said vehicle.

Armed with the foregoing observations and the knowledge he possessed about the vehicle, its' operator and the location of the robbery, this Court is of the opinion that Corporal Keates had a reasonable basis to believe that the suspects he had observed had committed the robbery and, therefore, probable cause existed to stop the vehicle in question.

In addition to all the foregoing, even if this Court were to assume *arguendo* that probable cause did not exist to stop the Defendant's vehicle, then this Court is of the opinion that Corporal Keates lawfully stopped the Defendant's vehicle for the purpose of conducting a limited investigation. This concept is often referred to as an "immediate response" as has been explained as follows:

"[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary ... it may be the essence of good police work to adopt an immediate response. A brief stop of a suspi-

cious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." See, *Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1970).

Under the circumstances presented in the instant case, Corporal Keates acted lawfully in stopping Defendant's vehicle under the concept of "intermediate response." Only minutes had elapsed since a clean-shaven, black male had robbed an Acme cashier. The robber was then in the process of fleeing the scene in a full-sized light colored vehicle. The streets were relatively deserted and Corporal Keates spotted a clean-shaven, black male operating a full-sized, light colored vehicle at a location approximately two blocks from the crime scene.

Having stopped the vehicle in question, Corporal Keates observed, in plain view, a lot of bills strewn about the front seat of the car. At that point, Corporal Keates had the right and the duty to search the persons and the vehicle not only as a search incidental to an arrest, but, also to protect himself. See, *Commonwealth v. Evans*, 314 Pa.Super. 16, 460 A.2d 350 (1983).

The second issue raised by Defendant in his post-trial motions was: Whether the jury verdict as to criminal conspiracy was supported by legally sufficient evidence.

The test for determining the sufficiency of the evidence when a conviction is challenged is: Whether reviewing all of the evidence, together with all reasonable inferences that can be drawn therefrom, in the light most favorable to the Commonwealth, the jury could have reasonably found that each element of the offense charged was supported by the evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Jackson*, 506 Pa. 469, 485 A.2d 1102 (1984); *Commonwealth v. Keblitis*, 500 Pa. 321, 456 A.2d 149 (1983). All direct,

circumstantial and corrobarative evidence can be considered in testing the sufficiency of the evidence. *Commonwealth v. Sullivan,* 472 Pa. 129, 371 A.2d 468 (1977).

Under existing law in Pennsylvania, the Commonwealth need not prove an explicit or formal agreement in order to establish the existence of a criminal conspiracy. *Commonwealth v. Manlin,* 270 Pa.Super. 290, 411 A.2d 532 (1979). An agreement may be proved inferentially by showing the relation, conduct or circumstances of the parties, *Commonwealth v. Jackson,* supra, and, overt acts of alleged co-conspirators are competent proof of a conspiracy. *Commonwealth v. Kennedy,* 499 Pa. 389, 453 A.2d 927 (1982).

In the opinion of this Court, there was legally sufficient evidence to sustain the Defendant's conviction for conspiracy to commit robbery. By his own admission, the Defendant had known the robber, Virgil Barclay, for a long period of time. In fact, the two had lived across the street from each other. On the night in question, the Defendant and Barclay had been out drinking together.

John Logan, an Acme employee, was in the subject parking lot, in his car, taking a break at the time of the robbery. Logan observed a car with two black males enter and park in the said lot. Then Logan observed the passenger get out of the car and prior to entering the store, the passenger was observed walking back and forth along the front of the store while looking into the store's glass windows. Some time later, Logan saw the passenger run out of the store, run in front of Defendant's car with a bag and a gun in his hands and jump into the passenger side of the car. The driver of the car then drove out of the parking lot with the headlights turned off.

Corporal Keates spotted the Defendant's vehicle only two blocks from the scene of the crime. Said vehicle was heading toward Keates, and away from the site of the robbery. As Defendant's vehicle passed the marked police car, Corporal Keates observed the passenger duck down.

While following Defendant's vehicle, Corporal Keates observed the Defendant bending down from side to side as if moving or reaching for something. Upon stopping the car, Corporal Keates saw a lot of bills, in plain view, scattered about the front seat of the car. A .38 caliber revolver was subsequently found in the glove compartment of the car.

In light of the legal authorities cited, as well as the facts and circumstances introduced as evidence in the case, the Defendant's post-trial motions were denied.