522 A.2d 1155

**COMMONWEALTH of Pennsylvania**

v.

**Emmitt A. VINSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 22, 1986.

Decided March 4, 1987.

Teresa C. Deni, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before WATKINS, CERCONE and HESTER, JJ.

CERCONE, Judge:

This is an appeal from a judgment of sentence imposed after a jury convicted appellant, Emmitt Vinson, of robbery, criminal conspiracy and carrying firearms on public streets

or public property. After post-verdict motions were denied, the court sentenced appellant to ten (10) to twenty (20) years imprisonment on the robbery conviction, a concurrent term of five (5) to ten (10) years imprisonment on the conspiracy conviction and a concurrent term of two (2) to five (5) years imprisonment on the firearms conviction. This appeal followed.

On January 14, 1983 at approximately 9:50 p.m. appellant and his companion robbed a Philadelphia Parking Authority cashier, at gunpoint, and fled with $468.00. The cashier notified the police who responded promptly. He described appellant as a black male, 28 to 30 years old, approximately 6'1" tall and 170 pounds, wearing a long white trench coat, blue denims which were cutoff at the cuff, and white socks. The cashier described appellant's companion as being a 28 to 30 year old black male, weighing 190 pounds and wearing a multicolored "lumberman jacket" with a tweed cap. The car was described as a 1974 to 1977 Grand Prix, dark blue with white pinstripes, a vinyl roof and a Pennsylvania license plate.

Approximately five to ten minutes after hearing the robbery report over the police radio, the arresting officers saw a car which fit the description at a gasoline station, located only a few minutes away by car from the robbery scene. The officers pulled up and asked the driver, the appellant, for some identification and for the car registration. While the officer's partner ran a check on the driver, the officer observed a crumpled trench coat in the back of the car. He then walked over to the driver's side and through the open door saw a pistol protruding from under the seat. The officers then handcuffed the suspects and searched them. The police recovered approximately $425.00 and also found a knife in the front seat of the car.

The officers radioed that they had two suspects and requested that the complainant be brought to them for a possible identification. When the complainant saw the officer pull up in the appellant's car, he yelled, "That's the car." He then identified the appellant.

Appellant's initial argument on appeal is that he was stopped and subsequently arrested without probable cause as there were too many discrepancies between the physical description of the culprits in the radio call and the actual appearances of appellant and his companion. Appellant further claims that the search of his person and his automobile and the complainant's "on-the-scene" identification should have been suppressed as fruits of this allegedly illegal arrest.

Initially we note that our function as an appellate court reviewing a denial of a motion to suppress is to determine:

[W]hether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.

*Commonwealth v. Reddix*, 355 Pa.Superior Ct. 514, 518, 513 A.2d 1041, 1043 (1986), *quoting Commonwealth v. W.P.*, 302 Pa.Superior Ct. 66, 69, 448 A.2d 97, 98 (1982). Moreover, when the evidence viewed in this manner supports the factual findings of the suppression court, we can reverse only if there is an error in the legal conclusion drawn from those factual findings. *Commonwealth v. Reddix, supra.*

■ Probable cause exists if the facts and circumstances within the knowledge of the police at the time of the arrest, and of which they have reasonably trustworthy information, are sufficient to justify a man of reasonable caution in the belief that a suspect has committed a crime. *Commonwealth v. Verdekal*, 351 Pa.Superior Ct. 412, 506 A.2d 415 (1986). It is only the probability of criminal activity, and not the certainty of such activity, that is the standard of probable cause. *Commonwealth v. Monroe*, 356 Pa.Superior Ct. 109, 514 A.2d 167 (1986).

■ Applying the law to the facts of the instant case, the trial court properly found that probable cause existed to

support the stop and arrest. Within ten minutes of hearing the police radio broadcast, the arresting officers observed a dark blue Grand Prix with white pinstripes at a gas station not far from the scene of the crime, and two black males pumping gas into the car. The correlation of the broadcast description with the officers' observations gave rise to probable cause to stop the vehicle. The fact that neither the appellant nor his cohort were as tall as the complainant estimated them to be does not invalidate the finding of probable cause. Nor does the fact that the officers did not observe the long white trench coat and the multicolored "lumberman jacket" the suspects were described to have been wearing, since both men had shed their outer coats by the time the officers spotted them.

■ Even if this court were to assume, *arguendo*, that probable cause did not exist to stop the appellant's vehicle, then this court is of the opinion that the officers lawfully stopped the appellant's vehicle for the purpose of conducting a limited investigation. This concept is referred to as an "intermediate response" and has been explained as follows.

A police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.... The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary ... it may be the essence of good police work to adopt an intermediate response.... A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. (citations omitted)

*Commonwealth v. Monroe, supra* 356 Pa.Superior Ct. at 115–16, 514 A.2d at 170–71, *quoting Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612,

616–617 (1972). Under the circumstances presented in the instant case, we believe that the officers had not only the right but the duty to stop appellant's vehicle.

■ Having stopped the vehicle in question, one of the officers observed, in plain view, a crumpled light colored trench coat on the rear floor behind the driver's seat. It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. *Commonwealth v. Janek*, 242 Pa.Superior Ct. 340, 363 A.2d 1299 (1976). Furthermore, the discovery of these objects established probable cause to arrest appellant. *Commonwealth v. Monroe, supra.* The subsequent search of the car which produced the knife and the search of appellant's person which produced the proceeds of the robbery, were valid searches incident to the arrest, *Commonwealth v. Monroe, id.*, and therefore all of the evidence acquired was admissible.

The appellant also contends that the complainant's identification of appellant was tainted by the allegedly illegal arrest and, therefore, should have been suppressed. Since we have determined that there was nothing illegal about the arrest, but on the contrary, it was wholly proper, the identification could not have been tainted. Furthermore, the identification of appellant took place only thirty minutes after the robbery and was soundly based on the victim's recent memory. This, too, was properly admissible.

The appellant next contends that his rights to equal protection of the laws and due process guaranteed by the Fourteenth Amendment were violated by his inclusion in the Career Criminal Program of the Philadelphia Common Pleas Court.[1] Appellant's argument on appeal consists only of a

1. The Career Criminal Program was established to promote more efficient prosecution of repeat offenders. Once a defendant is assigned to the program, one prosecutor becomes responsible for the case from pre-trial through the conclusion of the trial, and the case is tried before one of three designated judges. *See Commonwealth v. Carter*, 347 Pa.Superior Ct. 624, 501 A.2d 250 (1985).

one sentence allegation that the program "restricts the pool of Judges who may hear the case to those approved by the prosecution, creates bias in the presiding Judge, and irrationally limits the opportunity for trial before a Judge alone.[2]

■ These allegations have already been reviewed and rejected. In *Commonwealth v. Stinnett*, 356 Pa.Superior Ct. 83, 514 A.2d 154 (1986) the court found that the classification of defendants on the basis of prior criminal conduct does not involve a suspect or arbitrary classification, and held that there was no equal protection violation based upon inclusion in the Career Criminal Program. *Stinnett* also rejected the due process arguments raised in this appeal, reasoning that the mere fact that a trial judge is aware of a defendant's prior record does not automatically render him biased. Based upon the cases of *Commonwealth v. Stinnett, supra, Commonwealth v. Carter*, 347 Pa.Superior Ct. 624, 501 A.2d 250 (1985) and *Commonwealth v. Kellum*, 339 Pa.Superior Ct. 513, 489 A.2d 758 (1985) we uphold the lower court's finding that the Criminal Career Program is constitutional.

The appellant finally alleges that trial counsel was ineffective in that he failed to raise objections to the judgment of sentence either at the sentencing hearing or in a motion to modify sentence pursuant to Pa.R.Crim.P. 1410. When confronted with a claim of ineffectiveness of counsel, we must first determine whether the issue underlying the charge of ineffectiveness is of arguable merit. If the

2. The appellant has requested that this court defer decision on this issue because the issues he raises are currently on appeal to the Supreme Court of Pennsylvania in *Commonwealth v. Baker*, 353 Pa.Superior Ct. 641, 506 A.2d 1333 (1985) (per curiam) (allocatur granted 6/11/86). It is possible that appellant has not adequately briefed this issue due to the assumption that we would defer decision. However, as of the date this decision was authored, *Baker* had not yet been scheduled for oral argument before the Pennsylvania Supreme Court. Therefore, in the interest of the efficient administration of justice, we proceed to dispose of this issue in accordance with the law as it presently stands.

underlying issue is found to be of arguable merit, our inquiry shifts to a determination of whether the course chosen by counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth v. Evans,* 489 Pa. 85, 413 A.2d 1025 (1980). Furthermore, an appellant must show that any deficient performance by counsel caused prejudice and affected the outcome of the trial. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Commonwealth v. Buehl,* 510 Pa. 363, 508 A.2d 1167 (1986).

Appellant specifies that the trial court erred when it sentenced him to ten (10) to twenty (20) years imprisonment for his robbery conviction since this term exceeded the aggravated minimum range suggested in the Sentencing Guidelines, found at 42 Pa.C.S.A. § 9721. Further, appellant alleges that the court erred by failing to state upon the record at sentencing the reasons supporting the sentence and deviating from the guidelines.

■ Appellant's sentence did, in fact, exceed the statutory guidelines.[3] Although a sentencing court is not required to follow the guidelines, it is obligated to provide, on the record, a statement of the reason or reasons for deviation from the guidelines. *Commonwealth v. Royer,* 328 Pa.Superior Ct. 60, 476 A.2d 453 (1984). The court must demonstrate that it was aware of, and considered, the guidelines. *Commonwealth v. Chesson,* 353 Pa.Superior Ct. 255, 509 A.2d 875 (1986). Failure to comply shall be grounds for vacating the sentence. 42 Pa.C.S.A. § 9721(b).

In the case presently before this court, in addition to reviewing a presentence report which enumerated appel-

---

3. Appellant was convicted of robbery, 18 Pa.C.S.A. § 3701(a)(1)(ii), which has an offense gravity score of "7", and he had a prior record score of "6". The applicable ranges under the guidelines are:

| | |
|---|---|
| minimum: | 43–64 months |
| aggravated minimum: | 64–80 months |
| mitigated minimum: | 32–43 months |

The actual sentence imposed was 10 to 20 years, or 120 to 240 months.

lant's prior criminal convictions and reviewing a psychiatric report which made reference to appellant's drug habit, the sentencing judge merely concluded, saying:

> Mr. Vinson, the court, reviewing this entire matter, feels to sentence otherwise would depreciate this history of prior criminal conduct and what took place here.

The sentencing judge then proceeded to sentence appellant well in excess of the sentencing guidelines.

 Similar to the situation in *Commonwealth v. Chesson, supra,* the sentencing court here failed to indicate that it was even aware of the guidelines' ranges. We have reviewed the transcript of sentencing and find that nowhere did the court allude to the guidelines, nor indicate that it was aware of the guidelines' suggested ranges. We also find that the cursory statement of reasons offered to support the sentence may have been insufficient to support even a sentence which fell within the guidelines pursuant to the standard set forth in *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977), and was certainly inadequate to justify a sentence which fell outside of the guidelines. The sentencing court's more careful enunciation of its reasoning in its written opinion, does not cure the above-stated deficiencies. *Commonwealth v. Dorsey,* 328 Pa.Superior Ct. 241, 476 A.2d 1308 (1984). Based upon the foregoing, we hold that trial counsel was ineffective in failing to raise an objection to the sentence imposed for robbery. We vacate the sentence and remand for resentencing.[4] Jurisdiction relinquished.

---

**4.** Appellant has also requested that we remand to allow him to file a motion to modify sentence *nunc pro tunc* on the grounds that he did not knowingly waive his right to file such a motion. Since we have found it necessary to remand for resentencing, we need not address this issue.