634 A.2d 640

**COMMONWEALTH of Pennsylvania,**

v.

**Johnny Ray TALLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 16, 1993.

Filed Nov. 22, 1993.

Nick A. Turco, Public Defender, New Castle, for appellant.

Annette M. Hutchison, Asst. Dist. Atty., New Castle, for Com., appellee.

Before OLSZEWSKI, DEL SOLE and JOHNSON, JJ.

JOHNSON, Judge:

Johnny Ray Talley appeals from the judgment of sentence imposed following a bench-trial conviction on a charge of Firearms Not To Be Carried Without a License, 18 Pa.C.S. § 6106(a). Talley was sentenced to a term of incarceration of four to eight months. On appeal, Talley contends that the trial court erred in the denial of his motion to suppress physical evidence. We agree, and find that evidence seized during the search of the vehicle in which Talley was a passenger should have been suppressed as the product of an illegal search and seizure.

The underlying facts may be summarized as follows: At approximately 11:45 p.m. on November 6, 1991, Trooper Kevin Hughes was operating radar from his State Police cruiser when he observed the vehicle in which Talley was a passenger speeding at 68 m.p.h. in a 55 m.p.h. zone. Trooper Hughes testified that he pursued the vehicle, and, as he pulled behind the vehicle and stopped, observed that the passenger, Johnny Ray Talley, was moving "from side-to-side," "bent over in a forward position and he appeared to be fidgeting with the glove box." Trooper Hughes further testified that Talley's hands were near the glove box when he approached the stopped vehicle from the passenger's side. Trooper Hughes then testified that he informed the driver of the reason for the stop and then did a cursory search of the vehicle, of the hands of the driver and the passenger, and looked under the seats for weapons. Trooper Hughes then testified that:

At that time, I asked the passenger [Talley], you know, what he was doing with the glove box and I checked the glove box at the same time I was talking with him and it was locked, and I asked him, I said, you know, do you have a key for this glove box? And he says no. And I said, I asked him if it was his car; he said it was his car. At that time, I looked over on the console—not the console, but the steering column; there were keys hanging from that and one of the keys in this type of vehicle—I believe it was a General Motors product, one of the keys—there were two, there was—the ignition key was in and then another key hanging on that which looked like it would be a key that would open the glove box, and I asked him, I said, is that the key to the glove box hanging there and he had already told me no ... Then he just said, I don't know if that's the key. So I grabbed the keys out of the ignition, I unlocked the glove box and there I found the—a loaded .32 caliber revolver.

Suppression Hearing, Notes of Testimony, September 2, 1992, at 4–5.

Following the preliminary hearing, Talley filed a Motion for Pretrial Omnibus Relief in the form of a motion to suppress. After a hearing, the trial court denied this motion. Post-trial motions were denied, and this appeal followed.

Initially, we note that our role in reviewing an order granting or denying a motion to suppress is as follows:

In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Vinson*, 361 Pa.Super. 526, 522 A.2d 1155 (1987). If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Id.* When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is error in the legal

conclusions drawn from those factual findings. *Common-
wealth v. Reddix,* 355 Pa.Super. 514, 513 A.2d 1041 (1986).

*Commonwealth v. Lopez,* 415 Pa.Super. 252, 255, 609 A.2d 177,
178–179 (1992), *appeal denied,* 533 Pa. 598, 617 A.2d 1273
(1992); *see Commonwealth v. Germann,* 423 Pa.Super. 393,
621 A.2d 589 (1993); *see also Commonwealth v. Parker,* 422
Pa.Super. 393, 619 A.2d 735 (1993). It is with this standard in
mind, that we review this case.

. Talley does not challenge the validity of the traffic stop of
the vehicle in which he was a passenger. *See e.g. Common-
wealth v. Whitmyer,* 415 Pa.Super. 393, 609 A.2d 809 (1992)
(belief that a provision of the vehicle code was being violated).
Accordingly, the only issue presented for our review is wheth-
er the search of the locked glove compartment during a
routine traffic stop was illegal and whether the fruits of that
search should have been suppressed due to the Common-
wealth's failure to produce probable cause to warrant the
search.

In *Commonwealth v. Germann, supra,* we stated:

Our courts have sanctioned the warrantless search of a
vehicle, stopped for an ordinary traffic offense, only in those
cases where independent probable cause was established to
justify the search. We have persistently admonished, how-
ever, that stopping an automobile or arresting a driver for
an ordinary traffic offense, does not, without more, permit a
warrantless search of the vehicle. [*Commonwealth v.*] *Dus-
sell,* [439 Pa. 392, 266 A.2d 659 (1970) ]; *Commonwealth v.
Trunzo,* 404 Pa.Super. 15, 589 A.2d 1147 (1991). The validi-
ty of a warrantless automobile search incident to a summary
offense depends on the reasonable cause the seizing officer
has to believe that the contents of the automobile offend the
law; not the right to arrest. *Commonwealth v. Lewis,* 442
Pa. 98, 275 A.2d 51 (1971); *Commonwealth v. Bailey,* 376
Pa.Super. 291, 545 A.2d 942 (1988) (collecting cases).

To justify [a warrantless] search, even though a movable
vehicle is involved, an officer must have *independent
probable cause* to believe that a felony has been commit-

ted by the occupants of the vehicle, or that it has been used in the furtherance of the commission of a felony, or the officer must have a basis for believing that evidence of a crime is concealed within the vehicle, or that there are weapons therein which are accessible to the occupants.

*Bailey,* [376 Pa.Super.] at 300, 545 A.2d at 947 (citations omitted) (emphasis added). The evidence required to establish "probable cause" must be more than mere suspicion or good faith on the part of the police officer. *Dussell,* 439 Pa. at 396, 266 A.2d at 662 (*citing Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959)).

*Germann,* 423 Pa.Super. at 398–399, 621 A.2d at 592.

In *Germann,* we discussed several cases in which we sanctioned the warrantless search of a vehicle: for example, *Bailey, supra,* (officer observed a white substance he believed to be cocaine contained in a plastic bag); *Commonwealth v. Leet,* 401 Pa.Super. 490, 585 A.2d 1033 (1991) (probable cause to search vehicle stopped for motor vehicle violation arose after police detected odor of marijuana and beer emanating from defendant's vehicle); *Commonwealth v. Stoner,* 236 Pa.Super. 161, 344 A.2d 633 (1975) (probable cause to search stopped vehicle after police observed marijuana seeds and leaves inside vehicle); *Commonwealth v. Duell,* 305 Pa.Super. 431, 451 A.2d 724 (1982) (probable cause to search stopped car where police detected strong odor of marijuana and open wine bottle inside vehicle).

 Hughes testified that his reason for searching the vehicle in which Talley was a passenger was that Talley was "fidgeting with the glove box" and "then bec[ame] evasive." Hughes did not articulate any facts which suggested that Talley had committed any offense at the time of the search. Without articulable grounds to suspect the presence of drugs or other contraband, Hughes' authority was limited, by both the Pennsylvania and the United States Constitutions, to issuing a citation to the driver. *Lopez,* 415 Pa.Super. at 261, 609 A.2d at 177.

Despite the fact that there were no objective circumstances to support a suspicion that "drugs or other contraband" were hidden in the vehicle, Hughes searched the vehicle. In *Lopez* (*citing U.S. v. Guzman*, 864 F.2d 1512, 1519 (10th Cir.1988)), we noted that "when conducting a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check and issue a citation." *Id.*, 415 Pa.Super. at 261, 609 A.2d at 181. We observed that "[u]pon producing a valid driver's license and registration, the driver must be allowed to proceed" without "being subject to further delay by police for additional questioning." *Id.* at 261, 609 A.2d at 181–182. In order to justify detention "for further questioning, the officer must have 'reasonable suspicion "of illegal transactions in drugs or of any other serious crime." ' " *Id.* (quoting *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). When asked what illegal activity took place, Trooper Hughes responded that the driver was speeding but indicated that he issued no citation to the driver.

Not unlike the present case, in *Guzman, supra*, the officer attempted to articulate his suspicions by pointing to the demeanor and the answers to questions given by Guzman's wife. The Court of Appeals held that these suspicions did not arouse objective suspicion of any crime greater than failing to wear a seatbelt, the offense for which Guzman was stopped originally. The court also held that the officer's hunch was not sufficient to justify, after the fact, a seizure that was not objectively reasonable. *Id.*

We are constrained to reach the identical conclusion in the present case. The Commonwealth contends that Trooper Hughes did not exceed the scope of a permissible search when he unlocked and opened the vehicle's glove compartment. It is apparent from Trooper Hughes testimony that Trooper Hughes concluded that Talley was lying to him: "the key [was] hanging there ... and he told me [that] he didn't have a key." N.T. 9/2/92 at 5. Citing to *Commonwealth v. Morris*, 422 Pa.Super. 343, 619 A.2d 709 (1992), *alloc. denied*, 534 Pa. 654, 627 A.2d 731 (1993), the Commonwealth argues that this Court found a search of the passenger compartment and a

pat-down of the vehicle's passenger justified after a police officer observed the passenger's furtive movements in stuffing a brown bag under the passenger seat of the automobile. *Morris* is distinguishable on its facts from the present case.

*Morris,* as the Commonwealth properly notes, relies on *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which held that a police officer may "stop and frisk" an individual for weapons on an articulable suspicion that wrongdoing is afoot and that the subject may be armed. In addition, *Morris* relies on *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), which extended the *Terry* rationale to include the passenger compartment of a car, "limited to those areas in which a weapon may be placed or hidden ... if the police officer possesses a reasonable belief based on 'specific and articulable facts ... taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous." *Id.* at 1049, 103 S.Ct. at 3481, 77 L.Ed.2d at 1220. These cases do not obviate the need for probable cause in this Commonwealth for the warrantless search of an automobile stopped for a traffic violation under the *Bailey* standard.

■ The level of probable cause necessary for a warrantless search of an automobile is the same as that needed to obtain a warrant. *Commonwealth v. Pleummer,* 421 Pa.Super. 51, 617 A.2d 718 (1993). The fact that the warrant requirement is relaxed for searches of vehicles does not likewise relax the need for probable cause prior to the search. *Id.* The trial court characterized the trooper's description of Talley's actions as "evasive" and "nervous" and stated that "the officer had a particularized objective basis for suspecting criminal activity." The trial court also stated that "to allow the vehicle safe passage without a search of the glove compartment would completely ignore the inferences and deductions made by a trained law enforcement officer."

Here, the Commonwealth argues that the officer made a lawful stop, therefore, the officer was entitled to search the glove compartment for his own protection. The argument

fails. Trooper Hughes took no action evidencing any fear for his safety. Neither Talley nor the driver were asked to exit the vehicle. Nor were either of them searched prior to Talley's arrest. Trooper Hughes did not wait for his back-up, nor did he employ a *Terry* frisk to ensure that the driver and Talley were not armed. Thus, Trooper Hughes' claim that he had a reasonable suspicion that Talley was armed is not supported by the record.

From the circumstances of this case, we are constrained to conclude that the search by Trooper Hughes was not based on independent probable cause. Accordingly, for the reasons stated, the judgment of sentence imposed is vacated, and this case is remanded for a new trial at which the Commonwealth may not introduce the illegally seized evidence. Judgment vacated. Case remanded. Jurisdiction relinquished.

OLSZEWSKI, J., files a Dissenting Opinion.

OLSZEWSKI, Judge, dissenting.

I respectfully dissent from the decision of my esteemed colleagues. I find that Trooper Hughes's search of the glove box was reasonable. Consequently, I would affirm the judgment of sentence.

In *Commonwealth v. Morris*, 422 Pa.Super. 343, 619 A.2d 709 (1992), this Court held that when a police officer lawfully stops a vehicle, he may search those areas of the passenger compartment where a weapon may be hidden or placed if he has any reasonable suspicion, based on articulable facts, that the vehicle's occupants are armed. This holding is based on the officer's legitimate interest in protecting himself or herself. *Id.*, at 348, 619 A.2d at 712.

The facts in *Morris* are strikingly similar to those in the present case. Morris was a passenger in a car stopped by a police officer for failing to signal a right-hand turn. When the police officer approached the stopped car, he observed Morris stuffing a brown paper bag under the car seat. The officer went around the car to the passenger side and ordered Morris out of the car. The officer then searched the passenger

compartment and frisked Morris. While searching the passenger compartment, the officer seized the brown bag shoved under Morris' car seat and discovered that it contained clear vials of crack cocaine. This Court validated the police officer's search of the passenger compartment and his frisk of Morris because "the officer's observation of Morris' actions created more than a mere guess; his observations supported a genuine belief that his safety was in jeopardy and, at the very least, articulable suspicion that the bag contained contraband or a dangerous weapon." *Id.*

Turning to the case at hand, I find that Trooper Hughes's observations supported a genuine belief that his safety was in jeopardy and, at the very least, articulable suspicion that the glove box contained contraband or a dangerous weapon. Trooper Hughes testified that, after he pulled over the car in which appellant was riding, he observed appellant moving "around from side to side" and "fidgeting with the glove box." *See* majority opinion, at 352. When Trooper Hughes approached the passenger side of the car, he observed that appellant's hands were near the glove box. *Id.* Trooper Hughes informed the driver of the reason for the stop and then did a cursory search of the inside of the vehicle, of the hands of the driver and appellant, and looked under the seats for weapons. *Id.* Lastly, Trooper Hughes testified that appellant appeared "nervous" and was "evasive" when questioned. *Id.* at 357.

Based on these observations, I find that Trooper Hughes had a reasonable suspicion, supported by articulable facts, that appellant and/or the driver were armed and that a weapon was hidden in the glove box. Consequently, I would hold that Trooper Hughes was entitled to search the glove box for his own protection. Furthermore, I agree with the trial court that "under these facts, to allow the vehicle safe passage without a search of the glove compartment would completely ignore the inferences and deductions made by a trained law enforcement officer." Trial court opinion, 1/27/93, at 2.