## Commonwealth v. Novitzke

C.P. of Lawrence County, nos. 524 of 2009 and 525 of 2009.

*Diane Shaffer, assistant district attorney,* for Commonwealth.

*Dennis A. Elisco,* for defendant Jocelynne M. Novitzke.

*E. Brandt Bythrow,* for defendant Julius Ray Novitzke.

COX, *J.,* February 3, 2010—Before the court for disposition is the motion to suppress evidence filed on behalf of the defendant Jocelynne M. Novitzke and subsequently joined by her codefendant Julius Ray Novitzke, which argues that Pennsylvania State Police Trooper Bradley Wagner unlawfully detained the defendants after the completion of a valid traffic stop because the trooper lacked reasonable suspicion that criminal activity was afoot.

On April 23, 2009, Trooper Bradley Wagner was parked between the northbound and southbound lanes of Interstate 79 in the northeastern portion of Lawrence County when he observed a silver Chevrolet Suburban

in poor condition with an Indiana license plate traveling on the northbound side of the interstate. Trooper Wagner noticed that there were two occupants in the vehicle, a female was operating the vehicle and a male was in the front passenger seat. He observed two spider-web breaks in the windshield which appeared, at first, to be bullet holes and a necklace hanging from the rearview mirror. These garnered his attention because they are violations of the Motor Vehicle Code. Trooper Wagner pulled onto Interstate 79 and was traveling in the passing lane on the interstate, slightly behind the Suburban, so that he could see the vehicle's registration plate. Trooper Wagner began following the vehicle and it abruptly exited the interstate to a rest area; however, the turn signal on the vehicle was activated. The trooper decided to park his vehicle on the berm of the interstate beyond the rest area to see if the vehicle would return to Interstate 79, which it did almost immediately after it exited to the rest area. Trooper Wagner followed the vehicle and conducted a traffic stop and found Jocelynne M. Novitzke in the driver's seat and Julius Ray Novitzke in the front passenger seat.

He asked the defendants why they were traveling on the interstate and they answered, with some hesitation, that they were sightseeing; however, they could not provide any details regarding where they had been or what they had seen. At that point Trooper Wagner received the vehicle's insurance and registration which were in proper order. The trooper prepared a warning notice for a violation of windshield obstructions and wipers,[1] asked Ms. Novitzke to exit the vehicle and they

---

1. 75 Pa.C.S. §4524.

stood behind her vehicle. He subsequently returned her registration and driver's license, issued the warning and indicated that Ms. Novitzke was free to leave. She did so and as she approached her vehicle, the trooper asked her to return and speak with him. Ms. Novitzke complied with his request and Trooper Wagner asked if he could search the vehicle. She denied his request and replied that the only reason the trooper wanted to search her vehicle was because of her criminal record. He inquired as to what was her previous criminal history. Ms. Novitzke explained that she was arrested five years prior to the traffic stop for transporting ammonium anhydrous, a chemical component of methamphetamine. She hurriedly walked to her vehicle. Trooper Wagner followed her and was attempting to stop her from leaving because he believed he now possessed enough information to conduct a canine sniff of the vehicle. Ms. Novitzke entered the vehicle and attempted to place it in gear; however, she moved the gear shift to the neutral position, pressed the accelerator and the vehicle's engine revved loudly. At that time, Trooper Wagner was standing next to the driver's side door of the vehicle and was holding onto the driver's side window. Ms. Novitzke placed the vehicle in drive and drove away. The trooper pursued the defendants' vehicle, which was traveling at approximately 65 to 70 miles per hour. During the pursuit, the vehicle spun off the roadway and came to rest on the median strip.

Upon the trooper's arrival at the disabled vehicle, Trooper Wagner placed the defendants in custody. He then walked around the vehicle and observed a magazine for a .25 caliber pistol on the ground next to the driver's

side door. Soon thereafter, Corporal Kevin Jazemski arrived with his canine "Ebony" from the Mercer State Police Barracks. A canine sniff was conducted and the dog indicated near the rear of the vehicle. The Suburban was impounded and towed to the Pennsylvania State Police Barracks in New Castle. A search warrant was obtained from Magisterial District Judge Scott A. McGrath to search the vehicle. A search was conducted by Trooper Wagner and Corporal Jeremy Bowser of the Pennsylvania State Police, which revealed that the rear of the vehicle contained a pipe, some razors, a small butane torch and possible components of methamphetamine that included ice packs and ephedrine or pseudoephedrine. These materials were turned over to the clandestine lab response team, who specialize in the investigation of methamphetamine labs.

The defendants were arrested at the scene of the accident. After the search of the vehicle, Jocelynne Novitzke was charged with criminal attempt to manufacture a controlled substance,[2] delivery or possession with the intent to manufacture or deliver a controlled substance,[3] intentional possession of a controlled substance by a person not registered,[4] possession with the intent to use drug paraphernalia,[5] recklessly endangering another person,[6] fleeing or attempting to elude a police officer,[7] disregarding traffic lane,[8] turning movements and re-

---

2. 18 Pa.C.S. §901.
3. 35 P.S. §780-113(a)(30).
4. 35 P.S. §780-113(a)(16).
5. 35 PS. §780-113(a)(32).
6. 18 Pa.C.S. §2705.
7. 75 Pa.C.S. §3733(a).
8. 75 Pa.C.S. §3309(1).

quired signals,[9] careless driving,[10] reckless driving[11] and possession of red phosphorous, etc. with the intent to manufacture a controlled substance[12] at case number 524 of 2009. In addition, Julius Ray Novitzke was charged with criminal attempt to manufacture a controlled substance, delivery or possession with the intent to manufacture or deliver a controlled substance, intentional possession of a controlled substance by a person not registered, possession with the intent to use drug paraphernalia, recklessly endangering another person and possession of red phosphorous, etc. with the intent to manufacture a controlled substance at case number 525 of 2009.

The defendants now argue that they were unlawfully detained when Trooper Wagner followed Ms. Novitzke and attempted to stop her from entering her vehicle, so that he could conduct a canine sniff of the vehicle. The defendants insist the trooper lacked reasonable suspicion that criminal activity was afoot. More specifically, Trooper Wagner did not garner reasonable suspicion that the defendants were transporting a controlled substance merely because Jocelynne Novitzke mentioned that she had a prior conviction for transporting ammonium anhydrous.

Police officers may stop a motor vehicle for a violation of the Motor Vehicle Code and request license and registration, but must allow the driver to leave once the

9. 75 Pa.C.S. §3334(a).
10. 75 Pa.C.S. §3714(a).
11. 75 Pa.C.S. §3736(a).
12. 35 P.S. §780-113.1(a)(3).

citation was issued unless the officer has reasonable suspicion to suspect an illegal drug transaction or another serious crime. *Commonwealth v. Pless,* 451 Pa. Super. 209, 212, 679 A.2d 232, 234 (1996) (citing *Commonwealth v. DeWitt,* 530 Pa. 299, 304, 608 A.2d 1030, 1032 (1992); *Commonwealth v. Talley,* 430 Pa. Super. 351, 356, 634 A.2d 640, 643 (1993); *Commonwealth v. Lopez,* 415 Pa. Super. 252, 262, 609 A.2d 177, 182 (1992)). Once a traffic stop concludes, the interaction between a police officer and the defendant can occur in three ways:

"The first of these is a 'mere encounter' (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an 'investigatory detention' must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or 'custodial detention' must be supported by probable cause." *Commonwealth v. Phinn,* 761 A.2d 176, 181 (Pa. Super. 2000) (citing *Commonwealth v. Ellis,* 541 Pa. 285, 293-94, 662 A.2d 1043, 1047 (1995)).

The test for determining whether the interaction between a defendant and a police officer following a valid traffic stop is a mere encounter or investigatory detention is determined on several factors, which includes:

"(1) the presence or absence of police excesses; (2) whether there was physical contact; (3) whether police directed the citizen's movements; (4) police demeanor and manner of expression; (5) the location and time of

the interdiction; (6) the content of the questions and statements; (7) the existence and character of the initial investigative detention, including its degree of coerciveness; (8) 'the degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless, . . . thus suggesting to a citizen that his movements may remain subject to police restraint,' . . . and . . . (9) whether there was an express admonition to the effect that the citizen-subject is free to depart, which 'is a potent, objective factor.'" *Commonwealth v. Kemp,* 961 A.2d 1247, 1253 (Pa. Super. 2008) (quoting *Commonwealth v. Strickler,* 563 Pa. 47, 75, 757 A.2d 884, 898-99 (2000)).

In cases where the reason for the initial traffic stop has ended and a reasonable person would not believe they were free to leave, the subsequent round of questioning by the police is characterized as an investigative detention or arrest. *Commonwealth v. By,* 812 A.2d 1250, 1256 (Pa. Super. 2002) (citing *Commonwealth v. Freeman,* 563 Pa. 82, 89, 757 A.2d 903, 907 (2000)). If the stop is characterized as an investigative detention, the officer must garner reasonable suspicion that the person seized is engaged in unlawful activity. *Commonwealth v. Johnson,* 833 A.2d 755, 762-63 (Pa. Super. 2003) (citing *Commonwealth v. Reppert,* 814 A.2d 1196, 1203 (Pa. Super. 2002)). That means "the facts available to the officer at the moment of the (intrusion) 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Commonwealth v. Zhahir,* 561 Pa. 545, 552, 751 A.2d 1153, 1156 (2000). (citation omitted) "To establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunc-

tion with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." *Commonwealth v. Basinger,* 982 A.2d 121, 125 (Pa. Super. 2009) (quoting *Reppert, supra.*).

In *Commonwealth v. Rogers,* 578 Pa. 127, 849 A.2d 1185 (2004), the court addressed the issue of whether a Pennsylvania State Police trooper garnered the requisite reasonable suspicion to further detain an individual after the termination of a valid traffic stop. In that case, the trooper stopped a vehicle for speeding and for displaying an expired temporary Tennessee registration plate. When the trooper approached the vehicle, the appellant was extremely nervous to the point of trembling and he had difficulty retrieving his license from his wallet. The documentation presented to the trooper by the appellant was either incomplete or blatantly fraudulent. The appellant stated that he recently departed from a friend's residence, but could not recall the address. Moreover, the trooper noticed an open box of Tide powdered laundry detergent, an open box of Bounce fabric softener sheets and Scotch packaging tape in the back seat of the vehicle. He knew, from his experience investigating drug offenses, these items were commonly used in the packaging and distribution of controlled substances. More specifically, they are utilized as masking agents to cover the scent of drugs.

The *Rogers* court noted that the conduct in question does not need to be unquestionably criminal to rise to the level of reasonable suspicion, the true test "requires

a *suspicion* of criminal conduct that is reasonable based upon the facts of the matter." *Id.,* 578 Pa. at 135, 849 A.2d at 1190. (emphasis in original) The court reasoned that the totality of the circumstances provided the trooper with reasonable suspicion as the appellant was unusually nervous, the paperwork for the vehicle was not completed correctly and he could not provide details regarding the location from which he just departed. *Id.* Furthermore, the *Rogers* court stated, "most importantly, the back seat of his car contained products that [the trooper] knew, via his extensive professional experience, are commonly used in the packaging of illegal narcotics." *Id.* Thus, the court held that the trooper had reasonable suspicion that criminal activity was afoot and the trial court properly denied his motion to suppress evidence. *Id.*

Similarly in *Commonwealth v. Kemp,* 961 A.2d 1247 (Pa. Super. 2008), a Pennsylvania State Police trooper was monitoring traffic on the Pennsylvania Turnpike when he observed the appellant's vehicle with tinted windows and he began following the same. The trooper effectuated a traffic stop and noticed that the appellant was the passenger and another individual was driving the vehicle. When the driver opened the window, the trooper immediately noticed a strong odor of air fresheners and dryer sheets, which are commonly used as masking agents for drugs. The trooper asked the driver for registration, but the driver did not respond to his request. She also appeared to be "very nervous" and her carotid artery was pulsating. The trooper also noticed approximately 12 air fresheners in the vehicle. The driver provided the trooper with a New Jersey identification card, which appeared to be counterfeit, and the appellant pro-

duced a Florida driver's license. The trooper also noticed a faint odor of raw marijuana emanating from inside of the vehicle, which is an indication that there may be a large amount of marijuana in the vehicle. It must be noted that the trooper had extensive training in detecting indicators of drug trafficking and was aware that drug traffickers commonly attempt to mask the scent of marijuana with air fresheners. The trooper returned to his vehicle and discovered that the driver was not licensed to drive and the vehicle belonged to a third person. Subsequently, the trooper issued the driver warnings and asked her to exit the vehicle, so he could explain the warnings to her. After the explanation was concluded, the trooper told the driver "to have a nice day." As the driver began walking away, the trooper asked the driver if he could speak with her again and she agreed. The trooper asked her details of her travels, she responded by explaining that they traveled from Allentown to Pittsburgh and the driver was told she was free to leave. He then approached the appellant and the trooper returned the appellant's license and told him "to have a nice day." Again, the trooper re-initiated contact with the appellant and asked details about their travels and inquired as to whether there were any guns, drugs or money in the vehicle. The appellant looked away and responded negatively. The trooper asked to look inside the vehicle and the appellant permitted him to do so. The appellant opened the trunk and the trooper observed a plastic bag, which he grabbed and realized it was full of marijuana. The appellant and the driver were arrested and the appellant sought to have the bag of marijuana suppressed as the fruit of an illegal search because the trooper did not have reasonable suspicion that criminal activity was

afoot to re-engage the appellant after the initial traffic stop.

The *Kemp* court ruled that the facts adduced by the trooper during the valid traffic stop provided him with sufficient reasonable suspicion that the appellant and the driver were in possession of a controlled substance justifying the investigatory detention. *Id.,* 961 A.2d at 1254. First, the trooper noticed the overpowering scent of air fresheners, which he knew were used as a masking agent to hide the scent of drugs. *Id.* The trooper also noticed that the driver was extremely nervous and was operating a third-party vehicle. *Id.* Finally, the trooper noticed the odor of raw marijuana and was aware from his training and experience that the source of that smell is from a significant amount of marijuana. *Id.* The *Kemp* court reasoned, "[The trooper] not only observed two indicia of a drug courier, the presence of a masking agent and third-party vehicle ownership, he detected an odor of fresh marijuana indicating that a significant amount of that substance was present." *Id.,* 961 A.2d at 1255. Additionally, the appellant could not provide the correct name of the vehicle's owner and they were traveling from a source city. *Id.* The court held that the trooper had sufficient facts to support his reasonable suspicion that the appellant and the driver were in possession of drugs and the investigatory detention that occurred after the valid traffic stop was constitutional. *Id.,* 961 A.2d at 1260.

Conversely, in *Commonwealth v. Dales,* 820 A.2d 807 (Pa. Super. 2003), the court determined that reasonable suspicion did not exist to justify an investigatory detention after the completion of a valid traffic stop. A police officer was observing traffic exiting the Pennsylvania

Turnpike when he noticed excessive tinting on the defendant's vehicle. The police officer stopped the vehicle and observed the defendant sitting in the driver's seat. He also noticed several air fresheners hanging from the rearview mirror and elsewhere in the interior. The police officer also smelled a medicine-like aroma, similar to Bactine,[13] emanating from the vehicle. He believed the smell to be a masking agent, but could not definitively relate it to any particular controlled substance. Also, the defendant seemed nervous in responding to the police officer's questions. The police officer asked the defendant to accompany him to his vehicle and the defendant complied. The proper tinting arrangement was explained to the defendant at that time. The defendant received his license and registration, but the police officer asked him several questions while they were standing beside the vehicle, such as his reasons for visiting New York. The defendant responded that he was visiting his cousin, but had a difficult time indicating the sex of the cousin and eventually explained that the cousin was transsexual, a male dressed as a female. The police officer asked for consent to search the vehicle and the defendant permitted him to do so. During the search, the police officer found approximately one pound of crack cocaine in a duffel bag located in the trunk of the vehicle. The defendant filed a motion to suppress, which the trial court granted. The Commonwealth filed an appeal.

The *Dales* court ruled that the police officer did not have reasonable suspicion to proceed with an investiga-

13. The police officer in *Dales* associated the smell of Bactine with possession of cocaine.

tory detention after the completion of the valid traffic stop. *Id.,* 820 A.2d at 813-14. The police officer justified the detention by citing to the intense smell of Bactine, the use of air fresheners and the defendant's inconsistent statements regarding his activities in New York. It was noted that the police officer could not determine the cause of the Bactine smell, he thought it may have been caused by some kind of chemical or masking agent. *Id.,* 820 A.2d at 815. The *Dales* court concluded, "that these facts were insufficient to establish anything more than a hunch of possible criminal activity being afoot. Thus, we find that [the police officer] lacked the reasonable suspicion necessary to conduct the second round of questioning . . . ." *Id.*

In the case sub judice, it has been agreed upon by counsel at oral argument that an investigatory detention occurred when Trooper Wagner attempted to stop Ms. Novitzke from leaving after he issued her the traffic warning. The court concurs that the investigatory detention occurred when the trooper attempted to restrict Ms. Novitzke from leaving; thus, the court is precluded from considering Ms. Novitzke's attempt to drive away while Trooper Wagner was holding onto the driver's side window. Therefore, it is necessary for the Commonwealth to establish that Trooper Wagner had sufficient facts that criminal activity, other than the traffic violation, was afoot.

First, the Commonwealth explained that the defendants' vehicle was in poor condition and there were spider-web breaks in the windshield that appeared to be, but were not, bullet holes covering approximately one square foot of the windshield. There was also a necklace

hanging from the rearview mirror. Those facts provided the trooper with reasonable suspicion to effectuate the traffic stop, but did not indicate that other criminal activity was afoot.

Additionally, the vehicle abruptly exited the Interstate 79 when Ms. Novitzke noticed the trooper's vehicle; however, the turn signal was used during that maneuver. Trooper Wagner proceeded down the highway and parked on the side of the road. Almost immediately, the defendants' vehicle re-entered Interstate 79. The trooper promptly effectuated a traffic stop. It must be noted that when Trooper Wagner was following the vehicle he noticed it had an Indiana license plate, which prompted him to ask the defendants what they were doing in that area and they responded that they were sightseeing, but did not provide any details regarding any sights they had seen. Trooper Wagner subsequently asked Ms. Novitzke to exit the vehicle and he issued her a warning for the broken windshield and the necklace hanging from the rearview mirror. There does not appear to be a reason why Trooper Wagner asked Ms. Novitzke to exit her vehicle as the traffic violation dealt with the condition of the windshield and the necklace hanging from the rearview mirror. Unlike *Kemp,* where the trooper felt it necessary to demonstrate to the driver the proper amount of window tinting a vehicle is permitted. There was no apparent reason to require Ms. Novitzke to exit her vehicle at that time because the warning could have been given while she was still seated in the vehicle.

After the warning was issued, the trooper indicated that the defendants were free to leave. As Ms. Novitzke was walking back to her vehicle, Trooper Wagner asked

if he could search the vehicle. Ms. Novitzke refused to provide the trooper with consent stating that the only reason he wanted to search the vehicle was her prior conviction for transporting ammonium anhydrous. The trooper recalled that Ms. Novitzke hurriedly returned to her vehicle, but did not run. As a result, Trooper Wagner approached the vehicle to stop the defendants from leaving and he was holding onto the driver's side window when Ms. Novitzke attempted to place the vehicle in gear and drive away. However, Ms. Novitzke placed the vehicle in neutral and the engine revved loudly. Eventually, she placed the vehicle in drive and began traveling on the highway.

It appears that the Commonwealth has failed to establish that reasonable suspicion existed in the current case. The only indication that the defendants may have been involved in criminal activity was Ms. Novitzke's statement regarding her prior conviction for transporting ammonium anhydrous. The other factors cited by the Commonwealth may establish that a traffic stop was necessary, but do not indicate any other type of criminal activity. First, the Commonwealth states that the vehicle was in poor condition, but that only provides the trooper with the authority to effectuate a traffic stop. Furthermore, the Commonwealth places an emphasis on the evasive maneuvers utilized by Ms. Novitzke when she abruptly exited the highway and quickly returned to the same. Although this type of conduct is suspicious, the evasive driving could have been due to the defendants' desire to avoid receiving a traffic citation for the condition of the vehicle and is not necessarily an indicator of illegal drug activity. It must be noted that Ms. Novitzke used her turn signal when exiting the highway and

merely pulling into a rest area is not an illegal activity. Also, the Commonwealth stresses that the defendants said they were sightseeing, but could not provide any details as to what sights they had seen or where they were going. Conversely, the Commonwealth failed to establish that they visited a source city or they provided any other information that would indicate that they were involved in drug trafficking.

Therefore, the only indication Trooper Wagner observed that illegal drug activity was afoot was Ms. Novitzke's statement that he only wanted to search the vehicle because of her prior conviction. In *Kemp* and *Rogers,* the courts focused on the existence of masking agents, such as air fresheners and laundry detergent, which are utilized to eliminate the odor of drugs during transportation. In those cases, the law enforcement officers were able to immediately identify the substances as masking agents. Additionally, those officers pointed to other factors used in their determination that criminal activities were afoot, such as extreme nervousness by the driver or passenger, evasiveness by the defendants in answering questions and improper registration papers for the vehicles being driven. In the current case, Trooper Wagner was unable to identify any factors that indicated the defendants were transporting drugs, other than Ms. Novitzke's statement regarding a prior conviction. That statement alone is insufficient to establish reasonable suspicion in this case. If a prior drug conviction was sufficient to permit an investigatory detention, then a police officer would be permitted to search the vehicle of a person convicted of a drug offense any time that person committed a traffic violation. Moreover, there was no evidence presented that the defendants exhibited

any indication of extreme nervousness. Thus, the Commonwealth failed to prove that Trooper Wagner observed sufficient facts to establish reasonable suspicion that criminal activity was afoot to support an investigatory detention subsequent to the termination of the valid traffic stop.

The Commonwealth also argued that Trooper Wagner's extensive experience provided him with insight that, in conjunction with the facts of this case, allowed him to garner reasonable suspicion that illegal drug activity was afoot. However, the facts in the record do not sufficiently address Trooper Wagner's experience regarding his expertise in discovering the indicators of drug trafficking. The record introduced by the Commonwealth merely sets forth that Trooper Wagner has been employed by the Pennsylvania State Police for 12 years in traffic enforcement, which his main duties include investigating crashes and initial investigations in criminal incidents. He also stated that his main duties are speed enforcement and equipment violations. Although Trooper Wagner has extensive experience in traffic enforcement, the record is devoid of any reference to his expertise in the field of drug trafficking or transportation.

Even though the defendants' actions in this case are peculiar, it does not appear that they provided Trooper Wagner with reasonable suspicion that they were transporting illegal drugs. The facts of this case fall just short of the level of suspicion garnered by the police officers in *Kemp* and *Rogers*. Therefore, the court finds that Trooper Wagner did not have reasonable suspicion that the defendants were involved in criminal activity when he attempted to prevent Ms. Novitzke from leaving after

she received her traffic warning and the evidence discovered after Ms. Novitzke's automobile accident must be suppressed.

This was a difficult case to determine if reasonable suspicion existed to support an investigatory detention and it may be in the Commonwealth's best interest to seek appellate review of this court's decision. However, for the reasons set forth in this opinion, the defendants' motion to suppress evidence is granted.

## ORDER

Now this February 3, 2010, this case being before the court previously for a hearing on the motion to suppress evidence filed by the defendant with all parties appearing, the Commonwealth of Pennsylvania, represented by counsel, Diane Shaffer, Esquire, assistant district attorney for the County of Lawrence and the defendant, Jocelynne M. Novitzke, represented by counsel, Dennis A. Elisco, Esquire and the defendant, Julius Ray Novitzke, represented by counsel, E. Brandt Bythrow, Esquire and after consideration of the testimony, the briefs and oral argument submitted and presented by counsel and a complete and thorough review of the applicable record, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

(1) The motion to suppress evidence filed by the defendant is hereby granted.

(2) All evidence seized as a result of the traffic stop and subsequent searches is hereby suppressed and is ruled inadmissible at trial.

(3) The clerk of courts is directed to serve a copy of this order of court upon counsel of record.