## Commonwealth v. Barbati

C.P. of Lawrence County, no. 748 of 2009.

*Luanne Parkonen*, for the Commonwealth.
*Bradley G. Olson*, for defendant.

COX, *J.*, March 5, 2010—Before the court for disposition is the omnibus pretrial motion filed on behalf of

the defendant Eric T. Barbati, which sets forth the following arguments:

(I) The evidence discovered in the defendant's vehicle during the search by Officers Richard Ryhal and James Hoyland should be suppressed because the search was the product of invalid consent provided during an investigatory detention that was not supported by reasonable suspicion;

(II) The defendant's written statement should be suppressed because it was obtained through the use of illegally obtained items seized from the defendant's vehicle and the defendant was not provided with *Miranda* warnings prior to issuing his statement; and

(III) The Commonwealth failed to provide sufficient evidence that the defendant committed theft from a motor vehicle, theft by unlawful taking and receiving stolen property.

On June 25, 2009 at 3:15 a.m., Officers Richard Ryhal and James Hoyland of the New Castle Police Department were patrolling East Washington Street, New Castle, Lawrence County, Pennsylvania near A-Plus convenient store and gas station. Officer Ryhal observed the defendant operating a gold Toyota Camry, even though he had a suspended driver's license and the registration plate was expired. Shortly thereafter, the officers effectuated a traffic stop on Superior Street. It must be noted that while conducting the initial stop the officers noticed that the Pennsylvania State Police had placed a "Be On Look Out" or "BOLO" for the vehicle. It appears that the officers did not know the reason for the BOLO when they stopped the vehicle. Shortly thereafter, two Pennsylvania State Police troopers arrived and spoke with the defen-

dant. The testimony is unclear as to whether the police officers knew why the troopers wanted to speak with the defendant. It appears that the troopers wanted to question the defendant regarding several thefts involving automobiles. Subsequently, Officers Ryhal and Hoyland approached the vehicle and noticed that there were a large number of items inside of it. Officer Ryhal issued citations to the defendant, seized the defendant's license and informed him that he was free to leave. However, the defendant could not operate the vehicle because he was cited for driving with a suspended license. Further, the vehicle could not be driven as the registration had expired. Immediately after issuing the citations, Officer Ryhal requested permission to search the vehicle, which was granted by the defendant.

Officers Ryhal and Hoyland searched the vehicle and discovered a digital camera, GPS units, several pocket knives, lighters and sunglasses. Officer Ryhal recognized the sunglasses and a green pocket knife because those items were stolen from his blue pickup truck. He informed Officer Hoyland that the items belonged to him and Officer Hoyland conducted the remainder of the investigation. The defendant was taken into custody at that time. Subsequently, Officer Hoyland provided the defendant with a form stating his *Miranda* rights. The officer read the defendant his rights verbatim from the form. The defendant signed and dated the *Miranda* rights form provided to him by Officer Hoyland. Afterwards, the defendant supplied Officer Hoyland with a written statement explaining that he had stolen a knife and a pair of sunglasses from a blue pickup truck on the North Hill.[1] The defendant signed his written statement.

---

1. North Hill is the title given to an area of New Castle.

The defendant pleaded guilty to the summary offenses for driving while operating privilege is suspended or revoked[2] and registration and certificate of title required.[3] However, the defendant has also been charged with two counts of theft from a motor vehicle,[4] receiving stolen property,[5] theft by unlawful taking—movable property[6] and loitering and prowling at nighttime.[7] The defendant has filed this omnibus pretrial motion seeking suppression of the evidence discovered as a result of the search conducted by the officers, with the defendant's consent, because it was the product of an investigatory detention that was not justified by reasonable suspicion that a crime was afoot. Additionally, the defendant contends that his statement should be suppressed as it was coerced by the discovery of items illegally obtained from the defendant's vehicle and the defendant was not provided with his *Miranda* warnings. The defendant's final argument is the Commonwealth failed to produce the necessary evidence to establish a prima facie case that the defendant committed theft from a motor vehicle, theft by unlawful taking and receiving stolen property.

First, the court must address the defendant's contention that the search of the defendant's vehicle was the result of an investigatory detention which was not supported by reasonable suspicion. Police officers may stop a motor vehicle for a violation of the Motor Vehicle Code and

2. 75 P.S. §1543(a).
3. 75 P.S. §1301(a).
4. 18 Pa.C.S. §3934(a).
5. 18 Pa.C.S. §3925(a).
6. 18 Pa.C.S. §3921(a).
7. 18 Pa.C.S. §5506.

request license and registration, but must allow the driver to leave once the citation is issued unless the officer has reasonable suspicion to suspect an illegal drug transaction or another serious crime. *Commonwealth v. Pless*, 451 Pa. Super. 209, 212, 679 A.2d 232, 234 (1996) (citing *Commonwealth v. DeWitt*, 530 Pa. 299, 304, 608 A.2d 1030, 1032 (1992); *Commonwealth v. Talley*, 430 Pa. Super. 351, 356, 634 A.2d 640, 643 (1993); *Commonwealth v. Lopez*, 415 Pa. Super. 252, 262, 609 A.2d 177, 182 (1992)). Once a traffic stop concludes, the interaction between a police officer and the defendant can occur in three ways:

"The first of these is a 'mere encounter' (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an 'investigatory detention' must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or 'custodial detention' must be supported by probable cause." *Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa. Super. 2000) (citing *Commonwealth v. Ellis*, 541 Pa. 285, 293-94, 662 A.2d 1043, 1047 (1995)).

The test for determining whether the interaction between a defendant and a police officer following a valid traffic stop is a mere encounter or investigatory detention is determined on several factors, which includes:

"(1) the presence or absence of police excesses; (2) whether there was physical contact; (3) whether police directed the citizen's movements; (4) police demeanor and manner of expression; (5) the location and time of

the interdiction; (6) the content of the questions and statements; (7) the existence and character of the initial investigative detention, including its degree of coerciveness; (8) 'the degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless, . . . thus suggesting to a citizen that his movements may remain subject to police restraint,' . . . and (9) whether there was an express admonition to the effect that the citizen-subject is free to depart, which 'is a potent, objective factor.'" *Commonwealth v. Kemp*, 961 A.2d 1247, 1253 (Pa. Super. 2008) (quoting *Commonwealth v. Strickler*, 563 Pa. 47, 75, 757 A.2d 884, 898-99 (2000)).

In *Kemp, supra*, the appellant was a passenger in a vehicle while another individual was driving. At approximately 1:30 a.m., a Pennsylvania State trooper observed the vehicle and noticed heavily-tinted windows that prevented him from seeing inside, which violated 75 Pa.C.S. §4524. He effectuated a traffic stop of the vehicle and when the driver rolled down the window, the trooper smelled a heavy odor of masking agents, air fresheners and dryer sheets. The trooper requested that the driver and the appellant provide license and registration. The driver provided a New Jersey identification card that appeared to be counterfeit and the appellant produced a Florida driver's license. The trooper subsequently issued a warning for improperly-tinted windows and a license violation. He also asked the driver to exit the vehicle to explain the warnings. Additionally, the trooper indicated that the appellant would have to drive and told the driver to "have a nice day." When the driver began to walk away, the trooper re-initiated contact and asked to speak with her again. The driver agreed and,

after a short conversation, the trooper told her she was free to leave. The trooper then spoke with the appellant who was also standing outside of the vehicle. Subsequently, the trooper returned the appellant's driver's license and told him to have a nice day. However, the trooper immediately re-initiated contact with the appellant and asked whether the appellant had any guns, drugs or money inside of the vehicle. The trooper then requested permission to search the vehicle, which the appellant granted. As a result of that search, the trooper found a bag of marijuana in the trunk of the vehicle. The appellant challenged the constitutionality of the search and the trial court held that valid consent was provided to the trooper during a mere encounter following a valid traffic stop. The appellant was convicted of possession of a controlled substance, possession of a controlled substance with intent to deliver and conspiracy. He appealed the trial court's decision to deny his motion to suppress evidence contending that consent was provided during an investigatory detention which was not supported by reasonable suspicion.

The Pennsylvania Superior Court agreed that the interaction between the trooper and the appellant following the traffic stop was an investigatory detention, but it was supported by reasonable suspicion. *Id.*, 961 A.2d at 1254. The *Kemp* court examined the totality of circumstances involving the interaction between the trooper and the appellant to determine the coerciveness of their encounter. *Id.*, 961 A.2d at 1253. The court noted that the appellant and the driver were standing outside of the vehicle, which implies that they were less likely to believe they were free to leave. *Id.*, 961 A.2d at 1254. Additionally, the trooper immediately re-engaged the appellant

after he instructed the appellant that he was free to leave, which led to a seamless interdiction. *Id.* Thus, the *Kemp* court held that the appellant was subject to an investigatory detention. *Id.* However, it must be noted that the court would later explain that the investigatory detention was supported by reasonable suspicion that the appellant and the driver were trafficking illegal drugs. *Id.*

In *Pless, supra,* a Pennsylvania State trooper clocked the appellee's vehicle traveling on Interstate 80 at 75 miles per hour in a 55 mile-per-hour zone. Additionally, the vehicle's taillight was broken. The trooper stopped the vehicle, parked behind it and approached the driver's side. Upon request, the appellee provided her driver's license and registration to the trooper. The trooper returned to his patrol vehicle and started filling out a warning card for the traffic violations when he noticed the appellee squirming in her seat and moving her head from side to side. Eventually, the trooper completed the warning and asked the appellee to exit her vehicle, so that he could issue the warning and he returned the driver's license and registration to the appellee at that time. The trooper instructed the appellee that she was free to leave; however, the trooper immediately asked the appellee if she would answer some questions. The appellee complied with the request and, ultimately, granted the trooper permission to search her vehicle. The trooper discovered cocaine in the vehicle as a result of the search. The appellee was charged with unlawful possession with intent to deliver a controlled substance, unlawful possession of a controlled substance, unlawful possession of drug paraphernalia and criminal conspiracy. The appellee filed a motion to suppress evidence claiming that the search was unconstitutional because consent was provided dur-

ing an investigatory detention that was not supported by reasonable suspicion. The trial court granted the appellee's motion to suppress, which was appealed by the Commonwealth.

The *Pless* court explained that a driver must be allowed to leave after producing a valid driver's license and vehicle registration, unless the police officer has reasonable suspicion that a crime is afoot. *Id.*, 451 Pa. Super. at 212, 679 A.2d at 234. Initially, the trooper acted lawfully by stopping the appellee for violating the Motor Vehicle Code and by issuing a warning, but the trooper was required to allow the appellee to leave if he did not possess reasonable suspicion that the appellee had illegal drugs. *Id.* The *Pless* court held that the trooper "exceeded the lawful scope of a stop for a motor vehicle code violation, and therefore, the continued detention of appellee and the subsequent search were improper." *Id.,* at 213, 679 A.2d at 234.

In the case sub judice, it appears that the transition from the traffic stop to the subsequent request for consent to search the vehicle was seamless and it was reasonable for the defendant to believe that he was compelled to remain at the scene. Similar to *Kemp,* Officer Ryhal indicated that the defendant was free to leave and immediately requested consent to search the vehicle. The defendant did not have an opportunity to exercise his ability to leave the scene because he was not permitted to operate the vehicle due to his suspended license. Additionally, the officers intended to tow the defendant's vehicle because the registration was expired. The officers also did not walk away from the defendant's vehicle as they remained standing at the window. Furthermore, the officers did not halt their investigation or questioning of

the defendant after they informed the defendant he was free to leave. Officer Ryhal immediately asked the defendant for permission to search the vehicle.

There was also a degree of coerciveness present during the traffic stop which gave the impression that the defendant was not free to leave once the citations were issued. First, the traffic stop occurred at 3:15 a.m. Officers Ryhal and Hoyland approached the defendant's vehicle to question the defendant regarding the traffic stop and both officers were present at the time the defendant was informed he was free to leave. Moreover, two Pennsylvania State Police troopers arrived to question the defendant as well. Even though, the defendant was informed he was free to leave, he could not drive his vehicle because his license was suspended and he was not informed that he could contact someone to drive him home. As the *Pless* court indicated, the stop must not exceed the lawful scope of a motor vehicle code violation, unless the subsequent detention was supported by reasonable suspicion that a crime was afoot. *Id.* As in *Pless,* Officers Ryhal and Hoyland exceeded the scope of a normal traffic stop because they further detained the defendant when Officer Ryhal requested consent to search the vehicle immediately after providing the defendant with the citations and informing him he was free to leave.

As a result, the officers' search of the defendant's vehicle must be supported by reasonable suspicion or the items discovered are fruits of an illegal search. In cases where the reason for the initial traffic stop has ended and a reasonable person would not believe they were free to leave, the subsequent round of questioning by the police is characterized as an investigative detention or arrest. *Commonwealth v. By,* 812 A.2d 1250, 1256

(Pa. Super. 2002) (citing *Commonwealth v. Freeman*, 563 Pa. 82, 89, 757 A.2d 903, 907 (2000)). If the stop is characterized as an investigative detention, the officer must garner reasonable suspicion that the person seized is engaged in unlawful activity. *Commonwealth v. Johnson*, 833 A.2d 755, 762-63 (Pa. Super. 2003) (citing *Commonwealth v. Reppert*, 814 A.2d 1196, 1203 (Pa. Super. 2002)). That means "the facts available to the officer at the moment of the [intrusion] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Commonwealth v. Zhahir*, 561 Pa. 545, 552, 751 A.2d 1153, 1156 (2000). (citation omitted) "To establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him to reasonably conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." *Commonwealth v. Basinger,* 982 A.2d 121, 125 (Pa. Super. 2009) (quoting *Reppert, supra*).

In *Commonwealth v. Dales*, 820 A.2d 807 (Pa. Super. 2003), the court determined that reasonable suspicion did not exist to justify an investigatory detention after the completion of a valid traffic stop. A police officer was observing traffic exiting the Pennsylvania Turnpike when he noticed excessive tinting on the defendant's vehicle. The police officer stopped the vehicle and observed the defendant sitting in the driver's seat. He also noticed several air fresheners hanging from the rearview mirror and elsewhere in the interior. The police officer also smelled a medicine-like aroma, similar to Bactine,[8]

---

8. The police officer in *Dales* associated the smell of Bactine with possession of cocaine.

emanating from the vehicle. He believed the smell to be a masking agent, but could not definitively relate it to any particular controlled substance. Also, the police officer noticed that the defendant was nervous. The police officer asked the defendant to accompany him to his vehicle and the defendant complied. The proper tinting arrangement was explained to the defendant at that time. The defendant received his license and registration, but the police officer continued to ask him several questions while they were standing beside the vehicle, such as his reasons for visiting New York. The defendant responded that he was visiting his cousin, but had a difficult time indicating the sex of the cousin and eventually explained that the cousin was transsexual, a male dressed as a female. The police officer asked for consent to search the vehicle and the defendant permitted him to do so. During the search, the police officer found approximately one pound of crack cocaine in a duffel bag located in the trunk of the vehicle. The defendant filed a motion to suppress, which the trial court granted. The Commonwealth filed an appeal.

The *Dales* court ruled that the police officer did not have reasonable suspicion to proceed with an investigatory detention after the completion of the valid traffic stop. *Id.,* 820 A.2d at 813-14. The police officer justified the detention by citing the intense smell of Bactine, the use of air fresheners and the defendant's inconsistent statements regarding his activities in New York. It was noted that the police officer could not determine the cause of the Bactine smell, he thought it may have been caused by some kind of chemical or masking agent. *Id.,* 820 A.2d at 815. In fact, the police officer was not sure if the odor was Bactine. *Id.* The *Dales* court concluded, "that

these facts were insufficient to establish anything more than a hunch of possible criminal activity being afoot. Thus, we find that [the police officer] lacked the reasonable suspicion necessary to conduct [a] second round of questioning." *Id.*

In the current case, it appears that Officers Ryhal and Hoyland lacked reasonable suspicion that a crime was afoot when Officer Ryhal requested consent to search the defendant's vehicle. The only facts the Commonwealth presented to establish reasonable suspicion is the defendant had many items in his vehicle when the officers approached the same and the defendant was driving with a suspended license. Also, the registration on the defendant's vehicle was expired. It must be noted that the officers were not aware of the reason for the BOLO alert on the vehicle and they were not aware that the troopers were questioning the defendant regarding recent thefts. At the hearing held before this court, Officer Hoyland admitted that there was nothing noticeable to suspect that the defendant was involved in criminal activity prior to conducting the search of the vehicle. Moreover, Officer Ryhal indicated that there was no suspicious activities or materials inside of the vehicle. As in *Dales*, the Commonwealth has failed to establish reasonable basis to justify an investigatory detention of the defendant because there are no facts that indicate he was involved in criminal activity. Therefore, the search of the vehicle was not supported by reasonable suspicion and all of the evidence discovered as a result of that search must be suppressed.

Next, the defendant contends that his written statement should be suppressed as it was the product of being coerced by the items seized from the vehicle and he was

not provided with his *Miranda* rights. It appears that the exclusionary rule applies, not only to the items discovered in the vehicle, but to the defendant's written statement as well. The exclusionary rule applies to evidence obtained directly and indirectly from unconstitutional search or seizure. *Wong Sun v. U.S.,* 371 U.S. 471, 485, 83 S.Ct. 407, 416 (1963) (citing *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182 (1920)). The test for determining if the evidence is excludable under the rule set forth in *Wong Sun* is whether the evidence has been discovered through the exploitation of police conduct that is unconstitutional or whether the evidence is sufficiently distinguishable from the police conduct that it is purged of the primary taint of illegality. *Commonwealth v. Butler,* 729 A.2d 1134, 1138 (Pa. Super. 1999) (citing *Wong Sun, supra*).

"The 'fruit of the poisonous tree' doctrine excludes evidence obtained from, or acquired as a consequence of, lawless official acts; it does not exclude evidence obtained from an 'independent source.'" *Commonwealth v. Brown,* 700 A.2d 1310, 1318 (Pa. Super. 1997) (citing *Commonwealth v. Ariondo,* 397 Pa. Super. 364, 377, 580 A.2d 341, 347 (1990)). Clearly, the defendant's written statement was derived from the presence of the illegally obtained items recovered from his vehicle. For that reason, it would be inappropriate to allow the Commonwealth to utilize the defendant's statement at trial because it was the fruit of an illegal search. Therefore, the defendant's written statement is suppressed.

Finally, the defendant argues that the Commonwealth has failed to present sufficient evidence to establish a prima facie case that the defendant committed theft from

a motor vehicle, theft by unlawful taking and receiving stolen property. As a result of the suppression of the items discovered in the vehicle and the defendant's written statement, it appears that the Commonwealth has not presented sufficient evidence to establish a prima facie case that the defendant committed the crimes for which he is charged. Thus, the court must grant the defendant's petition for writ of habeas corpus and dismiss the charges of theft from a motor vehicle, theft by unlawful taking and receiving stolen property.

For the reasons stated in this opinion, the defendant's omnibus pretrial motion is granted.

## ORDER

Now March 5, 2010, this case being before the court on February 2, 2010, for a hearing on the omnibus pretrial motion filed by the defendant, with both parties appearing, the Commonwealth of Pennsylvania, represented by counsel, Luanne Parkonen, Esquire, assistant district attorney for the County of Lawrence and the defendant, Eric T. Barbati, represented by counsel, Bradley G. Olson, Esquire and after a hearing held, in accordance with the attached opinion, it is hereby ordered, adjudged and decreed as follows:

(1) The motion to suppress evidence is hereby granted and all evidence seized as a result of the search of the vehicle operated by the defendant is hereby suppressed.

(2) The motion to suppress statements of defendant is hereby granted and all statements taken from the defendant as a result of the search and seizure, which this court has ruled improper, are hereby suppressed.

(3) The petition for writ of habeas corpus is hereby granted due to the suppression of the search and seizure and statements of the defendant and the charges contained in the Information filed at the above-captioned term and number are hereby dismissed.

(4) The clerk of courts is directed to serve a copy of this order of court and attached opinion upon counsel of record, Luanne Parkonen, Esquire and Bradley G. Olson Jr., Esquire.